Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>SANDRA ELAINE MITCHELL,<br><br>                Defendant. | Case No. A05-0115 CR (JWS)<br><br>OMNIBUS MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE |

*1.     Introduction*

This memorandum accompanies four separate motions to suppress, all based upon Fourth, Fifth, and Sixth Amendment violations.  The facts in support of each flow together and are set forth in simple terms below.

*2.     Facts*

On December 10, 2005, a homeowner (or renter) called police and requested assistance regarding a female who was sitting down in the caller's back yard.  She had unsuccessfully attempted to climb out over his fence.  Police responded and found Sandra Mitchell standing in the fenced back yard, holding a couple of bags.

According to police reports, Ms. Mitchell seemed disoriented. Her answers to police questions were inconsistent. Police advised her that she needed to leave the back yard, and Ms. Mitchell complied. In the process, police touched her arm to walk with her on icy pavement, and Ms. Mitchell reacted by telling police to not touch her. Police became concerned that Ms. Mitchell was mentally unstable and decided to take her into custody for mental observation.

Police wrestled her into a waiting police car. In the process, they separated her from the bags, which were scattered on the driveway.

Police searched each and every part of the two bags, and little parcels within each bag, allegedly looking for identification. Police found a large quantity of what appeared to be methamphetamines. Instead of providing mental health treatment, police decided to take Ms. Mitchell to the Drug Enforcement Agency.

Police went to the Anchorage state courthouse and sought a warrant for Ms. Mitchell's home. The court denied the warrant.

Meanwhile, at the Drug Enforcement Agency, police undertook to interrogate Ms. Mitchell. In a tape-recorded conversation, police read her a *Miranda* warning. Ms. Mitchell unequivocally asserted her right to counsel. Police turned the tape off.

Off tape, police apparently explained to Ms. Mitchell the potential consequences of her conduct.

After about fifteen minutes, police went back on tape and Ms. Mitchell gave a statement. She confessed to her involvement with the contraband.

The officer who obtained the confession went back to the state courthouse and obtained a warrant for Ms. Mitchell's house, 3AN-05-1286(sw).

During the course of the post-*Miranda* interrogation, the confession portion, Ms. Mitchell admitted that she had put some of the packaging for the contraband found in her possession in garbage bags on her next door neighbor's property. Police recovered this evidence during the execution of the search warrant.

3.  *Issues Presented*

First, the court must determine whether police had a right to take Ms. Mitchell into protective custody.

Second, did police have a right to search her bags?

Third, did police scrupulously honor Ms. Mitchell's assertion of her *Miranda* rights, her right to the presence of counsel?

Fourth, is the warrant the fruit of either or both of the above noted violations?

Fifth, is the search of the garbage bags on the neighbor's door step the fruit of an involuntarily obtained confession?

4.  *Law and Argument*

   a.  *Insufficient probable cause to place Mitchell in custody*

Under Alaska law, police can take a citizen into custody if police have probable cause to believe that the person is so gravely disabled that they are "likely" to cause "serious harm" to themselves or others:

> A peace officer . . . who has probable cause to believe that a person is gravely disabled or is suffering from mental illness and is likely to cause serious harm to self or others of such immediate nature that considerations of safety do not allow initiation of involuntary commitment procedures set out in AS 47.30.700, may cause the person to be taken into custody and delivered to the nearest evaluation facility. . . .

Alaska Stat. § 47.30.705.

Even if Alaska did not have this law on the books, the probable cause standard of immediate and serious danger to herself or others would apply under the Fourth Amendment. See *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1992); *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997).

Ms. Mitchell simply asserts that the information possessed by the police was insufficient, as a matter of fact or law, to conclude that probable cause existed to believe that she posed an "immediate" threat to cause "serious harm" to herself or others. Police undoubtedly had a reason to believe she was mentally uneven. She was disoriented, and appeared to be lost and confused.

But, these were not the reasons police took her into custody. Police reacted to her unwillingness or inability to easily cooperate with them. This may be an affront to the police, but it does not form the basis for taking her into custody.

    b. *Police had no right to search her bags*

Once police had her in custody, police then proceeded to thoroughly search her bags. Ms. Mitchell did not consent to this search, and she is unaware of any other exception to the warrant requirement that applies. In making this argument, Ms. Mitchell is aware of the ordinary rules regarding "search incident to arrest." *United States v. Nohara*, 3 F.3d 1239, (9th Cir. 1993); *United States v. Turner*, 926 F.2d 883, 887-88 (9th Cir. 1991).

In this motion, Ms. Mitchell asserts that this scenario does not meet any of the narrowly-defined exceptions to the warrant requirement. In particular, because

she was not being arrested for a crime, the foundation for the exception to the need for a warrant (safety to officers and need to preserve evidence) does not apply with the same presumptive force, and police do not have a right to search extraneous packages, especially after the allegedly ill person has been separated from them.

    c. *The follow-up interrogation of Ms. Mitchell after she asserted her Miranda rights was illegal*

This issue is simple. If the accused, in custody, requests to see an attorney, counsel must be provided before any questioning. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981): *United States v. Younger*, 398 F.3d 1179, 1187 (9th Cir., 2005).

Ms. Mitchell requested counsel, on tape, and then off tape, police initiated and effectively encouraged a waiver of her rights by advising her of potential consequences of upcoming allegations.

    d. *Fruit of poisonous tree items include the eventual warrant for Ms. Mitchell's home and the garbage at the neighbor's house*

Ms. Mitchell has tried, without immediate success, to gain access to the testimony submitted in support of the search warrant for her house. Nevertheless, it is inevitable that if the initial search of her bags fails, then evidence seized from the search of her house would be suppressible fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *quoting Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). To successfully suppress evidence as the fruit of an unlawful detention, a defendant must establish that the detention violated his Fourth Amendment rights, and that, "but

for the illegal actions of the police," *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the evidence would not have been discovered. *See United States v. Twilley*, 222 F.3d 1092, 1095-96 (9th Cir. 2000).

Ms. Mitchell asserts that this standard applies to the alleged Fifth Amendment violation, the taking of her statement after she invoked her right to counsel. She does so because the topic of the off tape conversation, the potential consequences of her possession of a large quantity of methamphetamines, rendered any subsequent statement involuntary under the Fifth Amendment. Physical evidence seized as a result of this sort of Fifth Amendment violation is suppressible. *See United States v. Patane*, 542 U.S. 630, 639, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004).

> 5. *Conclusion*

All of the evidence seized in this case is the result or fruit of Fourth and Fifth Amendment violations.

DATED this 20th day of January, 2006.

> Respectfully submitted,
>
> FEDERAL PUBLIC DEFENDER
> FOR THE DISTRICT OF ALASKA
>
> /s/ Michael D. Dieni
> Assistant Federal Defender
> Alaska Bar No. 8606034
> 550 West 7th Avenue, Suite 1600
> Anchorage, AK  99501
> Ph:  (907) 646-3400
> Fax:  (907) 646-3480
> mike_dieni@fd.org

Certification:

I certify that on January 20, 2006, a copy of the foregoing document, with attachments, was served electronically on:

Larry D. Card, Esq.

/s/ Michael D. Dieni