**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA

Plaintiff,

vs.

SANDRA ELAINE MITCHELL,

Defendant.

3:05-cr-00115-RRB-JDR

**RECOMMENDATION REGARDING MOTIONS TO SUPPRESS**

(Docket Nos. 28, 29, 31, 33, 41)

Defendant **Sandra Mitchell** has filed five motions to suppress as follows: Motion to Suppress Warrantless Search of Defendant's Possessions, Docket No. 28; Motion to Suppress Defendant's Statement (sic), Docket No. 29; Motion to Suppress Evidence Seized from Neighbor's Garage, Docket No. 31; Motion to Suppress Evidence Seized from Defendant's Home Pursuant to Search Warrant, Docket No. 33; and Motion to Suppress Statements, Docket No. 41. The

first four motions were filed prior to an evidentiary hearing. The fifth motion to suppress was raised as a result of evidence adduced at the evidentiary hearing. The government initially opposed the first four motions to suppress, namely Docket Nos. 28, 29, 31 and 33. At the commencement of the evidentiary hearing conducted February 3, 2006 the government withdrew it's opposition to Docket Nos. 29, 31 and 33 on grounds that it does not intend to offer the evidence sought to be suppressed in those motions. **Accordingly, the court should grant as unopposed the motions to suppress at Docket Nos. 29, 31 and 33.**

Mitchell filed an omnibus memorandum that addressed in part the disputed Motion to Suppress at Docket No. 28. *See* Omnibus Memorandum in Support of Motions to Suppress Evidence, Docket No. 32. The government filed an opposition to these motions at Docket No. 35. Subsequent to the evidentiary hearing Mitchell filed a written motion to suppress statements with an accompanying memorandum of points and authorities to preserve her arguments seeking to suppress statements initially presented orally at the evidentiary hearing. Docket No. 41. The government filed an opposition at Docket No. 47. Upon due consideration of the evidence adduced and arguments of counsel the **magistrate judge recommends that the court deny the motions to suppress at Docket Nos. 28 and 41, and adopt findings of fact and conclusions of law as set forth below.**

## Findings of Fact

On December 10, 2005 Kevin Thomas rented his residence as 520 Carin Place No. 2. About 10:45 p.m. that evening he was going to his truck and noticed a women later identified as the defendant Sandra Mitchell standing in the road. She appeared to him to be suspicious and seemed to be hiding and seemed scared and upset. Although he was about 20 yards from her he could not understanding what she was saying. The temperature was between 30 degrees Fahrenheit and 37 degrees Fahrenheit and the women was wearing a light jacket with a hood. She was carrying a big bag which she held close to her body with both of her hands. Mr. Thomas did not know the woman and perceived she was in trouble. Although Mitchell said nothing threatening to Thomas, he became fearful for the safety of his family. He went inside to call 911. While inside he observed Mitchell go into a neighbors yard and then into his yard. He waited on his front porch for the police to arrive.

Anchorage Police Officers Gregory Witte and Eric Smith arrived at 520 Carin Place before 11:00 p.m. at about the same time. They parked about two houses away. When Officer Smith arrived he observed Officer Witte standing in a driveway with Mitchell in front of him. Mitchell was pacing back and forth in front of the officer and flaying her arms. She was wearing a long sleeve tee-shirt and had her coat tied around her waist. Officer Witte motioned to Officer Smith to come

forward. Officer Witte then told Officer Smith that he believed they had an "11-38." (Police jargon for person with a mental problem). Mitchell appeared nervous and kept looking behind her back and glaring over her shoulder although no one else was there. Her hair appeared very curly and frizzy, almost standing straight up. Mitchell repeatedly told the officers not to touch her.

The officers decided to detain Mitchell and take her to Providence Hospital for an evaluation. They attempted to cuff Mitchell but she continued to clutch a bag with both hands. As Officer Smith attempted to cuff Mitchell she pulled her arm from him toward the bag. Meanwhile, Police Officer Jack Carson had arrived at the scene and took the bag from Mitchell. Mitchell was yelling "stay away, don't touch me. I've done nothing wrong." During the tug of war Officer Carson had with Mitchell over the bag the officer jerked the bag out of her hand and some of the contents scattered on the ground.

Mitchell declined to identify herself. At the scene Officer Witte told Officer Carson that Mitchell claimed that she was Sandra Bullock. While at the scene Officer Witte had run that name and found no match for a Sandra Bullock.

After Mitchell was placed in a patrol car Officer Smith asked her if she had any mental health issues. Mitchell responded that she did not but added she had smoked too much meth and needed to go to the hospital. Mitchell had not been advised of her Miranda warnings prior to that colloquy. Officer Smith characterized

the initial custody of Mitchell as detention for her care and for public safety not for the purpose of arresting her for a crime.

At the scene Officer Carson looked into the bag for any identification for the person, medicine or weapons. Finding no identification he looked inside a small “cat” bag and found a coffee cup with what looked like snow. His first impression was that she was bagging snow based upon her bizarre behavior. Shortly thereafter he recognized that the substance might be crystal methamphetamine. He ceased his search and conducted a field test which proved positive for methamphetamine. Mitchell had not displayed the characteristics of someone who is high on methamphetamine. Because the officers found suspected illicit drugs on Mitchell they arrested her and took her to jail rather than to the hospital.

The officers sought but were denied a search warrant for Mitchell’s home. At the office of the Drug Enforcement Agency (DEA) officers undertook to interrogate Mitchell. The officers gave her the Miranda warnings and she asserted her right to counsel. The officers returned to the State Court house and obtained a search warrant for Mitchell’s residence. (Case. No. 3AN-05-1286SW.)

**Discussion of the Law**

Mitchell argues that the officers violated her constitutional rights when they took her into custody. The defendant acknowledges that under Alaska State

law police can take a citizen into custody if the prerequisites are met in Alaska Statute 47.30.705 which provides as follows:

> "A peace officer . . . who has probable cause to believe that a person is gravely disabled or is suffering from mental illness and is likely to cause serious harm to self or others of such immediate nature that considerations of safety do not allow initiation of involuntary commitment procedures set out in AS 47.30.700, may cause a person to be taken into custody and delivered to the nearest evaluation facility . . . ."

The parties dispute whether the officers had a right to take Mitchell into protective custody pursuant to this statute. The government bases its argument of probable cause on the facts that Mitchell was brought to the attention of the Anchorage Police by a concerned citizen who reported that Mitchell was evidencing a bizarre behavior. After the police arrived at the scene they observed first hand Mitchell's unusual behavior and her distraught demeanor. In considering the totality of the circumstances the officers consider the report by Mr. Thomas that Mitchell appeared to be hiding and trespassing on private property including Thomas's own back yard.

The police response was consistent with an assumption that they were dealing with a medical or mental health case until they discovered the crystal methamphetamine. As the government notes Mitchell was not on her own property and it was getting late in the evening. In her memorandum Mitchell argues that although the police undoubtedly had a reason to believe she was "mentally uneven . . . disoriented and appeared to be lost and confused," these were not the reasons the police took her into custody. *See* Defendant's Omnibus Memorandum at Docket No. 32, p.4. This argument fails to separate the reasons for initially taking her into custody and the reasons for retaining that custody after the police had probable cause to arrest her for a drug crime.

Mitchell argues that the police had no right to search her bags. To the contrary, because the police had the right to take her into custody because she was likely to cause serious harm to herself or others and because the need for immediate action was appropriate for the safety of Mitchell and the public, AS 47.30.705 allows the officers to take her into immediate custody and deliver her to the nearest evaluation facility prior to the initiation of involuntary commitment procedures set out in AS 47.30.700. The right to take someone into custody includes the right to search that person for officer safety. Any reasonable interpretation of § 705 allows the officers to search for medicine in that person's immediate control where there arises a legitimate concern for public safety and well being of the person encountered who

may have been administered the wrong dosage or no dosage of prescribed medication.

Mitchell cites Maag v. Wessler, 960 F.2d 773 (9th Cir. 1992) in support of her argument that the police violated her constitutional rights when they initially detained her. In Maag a patient who had been taken into custody for medical evaluation brought a civil rights action against the city and police officers. The district court denied the defendant's motion for summary judgment and on appeal the Ninth Circuit Court of Appeals reversed the holding that the officers had probable cause to bring the patient into custody entitling them to qualified immunity. The court held that the seizure of a mentally ill person is analogous to a criminal arrest and therefore must be supported by probable cause under the Fourth Amendment.

Probable cause is cause to take the patient into custody for medical evaluation, not cause to believe that the person has committed a crime. The Fourth Amendment protects against an unreasonable governmental seizure of a person for any purpose. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989). In the instant case, the defendant's Fourth Amendment rights must be evaluated under the particular circumstances of the case. In Maag the officers acted at the request of the patient's family and friends and on the recommendation of a physician after observing the patient's irrational behavior. The appellate court found that the officers had probable cause to take Maag into protective custody based upon the

state Statute (Montana), the information from family members and friends, the officer's own observations and the physician's recommendation that Maag be brought to the hospital. The court found that the removal of Maag's guns was a reasonable precaution to prevent potential harm. In the instant case, the officers had probable cause to detain Mitchell based upon there own observations and the report of Mr. Thomas.

Asking a person encountered to provide identification during a police contact does not require prior advisement and waiver of Miranda rights. Mitchell provides no authority for such requirement. Asking a person to identify themselves is not information protected by the Fifth Amendment or the right to privacy, particularly where that person is taken into protective custody and identification of identity is appropriate before the individual is turned over to the medical authorities for evaluation. Mitchell was not being interrogated when the officer asked her if she had any mental health issues. It is not a crime to have mental health problems and Mitchell was not a target of any criminal investigation nor was such investigation being conducted at that time.

Since Mitchell was lawfully taken into protective custody, it follows that the police had a right to search her bags before turning Mitchell over to health authorities. It was reasonable under the Fourth Amendment for the officers to look through her bags for any type of identification for medication. After the discovery of

the presumptive methamphetamine it was lawful for the officers to search Mitchell's bags for evidence of controlled substances. I find no evidence that the officers were motivated by the desire to collect evidence of a crime when they asked her to identify herself. In New York v. Quarles, 467 U.S. 649, 657 (1984) the Supreme Court ingrafted a "public safety" exception onto the Miranda rule. The need for answers to questions in a situation possing a threat to public safety outweighs the need for the rule protecting the rule against self-incrimination. This exception applies to exigencies involving the safety of the public and officers on the scene. *See* United States v. DeSantis, 870 F.2d 536 (9th Cir. 1989).

I take guidance from Quarles. I find Mitchell's statements were made voluntarily and without coercion by the officers. The failure of the police to administer a Miranda warning to Mitchell does not mean that her statements received were actually coerced. The prophylactic Miranda warnings are not "themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." Michigan v. Tucker, 417 U.S. 433, 444 (1974). Mitchell's incriminating response about methamphetamine went beyond the officer's inquiry concerning mental health problems. This is not a situation where the officer pointedly asked her if she had consumed any controlled substances.

I conclude that the officers had probable cause to believe that Mitchell was likely to cause serious harm to herself or others and that the urgency of her conduct supported a decision that an immediate action was needed before any involuntary commitment procedures could be undertaken. The evidence indicates that the officers intended to take her into custody for emergency evaluation up until the time they lawfully gained evidence that she probably committed a crime by possessing methamphetamine. By the time Mitchell was placed in the police vehicle the officers had gained probable cause to arrest her. **The motions to suppress statements, Docket No. 28 and 41 should be denied. IT IS SO RECOMMENDED.**

DATED this 10th day of March, 2006, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Friday, March 17, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th

Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, Tuesday, March 21, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).