Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SANDRA ELAINE MITCHELL,<br><br>Defendant. | Case No. 3:05-cr-0115-RRB<br><br>DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE REPORT AND RECOMMENDATION REGARDING MOTION TO SUPPRESS |

Defendant, Sandra Elaine Mitchell, by and through counsel Michael Dieni, Assistant Federal Defender, objects to the Magistrate Judge's recommendation (hereinafter RR) to deny the defendant's motions to suppress at Dockets 28 and 41. Ms. Mitchell objects to the entirety of the basis for this recommendation. The focus of the memorandum that follows, however, is the recommendation to uphold evidence seized as a result of the officers' initial arrest of Ms. Mitchell. The RR makes the greatest error here. The law is clear on this point and all of the post-arrest evidence must be suppressed.

The initial arrest occurred without probable cause to believe Ms. Mitchell was an immediate danger to herself or others. The evidence supporting a finding of mental

health disorder was itself minimal. No evidence supported the conclusion that Ms. Mitchell posed an imminent risk of harm to herself or others.

The key deficiency to the RR is that it contains no findings of fact that Ms. Mitchell posed any *particular* risk of harm. RR 11. This is likely because the actual facts from the hearing in the transcript do not support this conclusion.

It is important to note that the subjective intent of the police, no matter how admirable, is not a basis for upholding a seizure against Fourth Amendment scrutiny. *Whren v. United States*, 517 U.S. 806, 812-15, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (an arresting officer's state of mind (except for facts that he knows) is irrelevant to the question of whether there is a sufficient basis for a finding of probable cause). *Beck v. Ohio*, 361 U.S. 98, 80 S. Ct. 168 (1964) ("If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police.").

The law here is clear that mental instability – standing alone – is insufficient to justify a mental health based arrest when challenged under the requirements of the Fourth Amendment or local state law. Alaska Stat. § 47.30.705; *Maag v. Wessler*, 960 F.2d 773 (9th Cir. 1992). There must be additional evidence that Ms. Mitchell was, then and there at the time of the arrest, "likely to cause harm to herself or others." Therefore, Officer Smith's report that Officer Witte (who did not testify) believed Ms. Mitchell to be "11-38," a "mental person," and Officer Carson's testimony that Ms. Mitchell appeared to be

mentally unstable, is not sufficient evidence – proof – by itself, that there is a factual basis to put Ms. Mitchell under arrest.[1]  Here is a summary of the evidence.

Kevin Thomas, the person who called police, provided testimony as to some of the information probably available to the police who made the arrest.  None of it establishes that Ms. Mitchell presented a threat of imminent harm to herself or others.  He observed Ms. Mitchell to be apparently "hiding" and "running," "very scared and upset." Tr. 9.  In his view, she was wearing "normal" clothes, including a sweatshirt with a hood on her head. Tr. 10-11.  He felt it was "strange behavior" and she appeared to be "frightened." Tr. 15.  Mr. Thomas called 911, not because the suspect appeared to be a danger to herself, or because she had threatened to harm him, but because he did not know what was going on and felt fear for his family.  Tr. 15.  He did not observe her to do anything to put herself or others at risk.  Tr. 15.

Officer Smith was the second officer to arrive.  He arrived before the third officer, Officer Carson.  He observed Ms. Mitchell talking to Officer Witte, the first officer to arrive. (The government did not call Officer Witte to testify.)  He described Ms. Mitchell to be pacing and *flailing* her arms.  Tr. 18.  (Not "flaying," as set forth in the RR at 3.)  He later admitted in his testimony that the flailing "wasn't . . . out of control."  Tr. 33.  He described her as "agitated," "very nervous," looking behind as if someone might be behind

---

[1] Ms. Mitchell objects to the citation to her counsel's opening brief on the issue at RR 7.  Counsel did not testify at the hearing, and no witness testified that Ms. Mitchell appeared to be either "disoriented" or "lost."  These representations were counsel's best effort to predict the testimony at the hearing and are herein disavowed, to the extent the real record fails to include or support these prognostications.  Even if accepted on face value, these statements do not support a finding that Ms. Mitchell posed and immediate risk of serious harm to herself or others.

her. Tr. 19. The officer concluded that he "didn't know if it was paranoia . . . [he] didn't know what was going on." Tr. 20. Her hair was frizzy. Tr. 20. He admitted that her hair at the time of the court hearing was "a little frizzy." Tr. 34. She took no aggressive action toward anybody; nor did she do anything to endanger herself. Tr. 34.

Officer Carson, the third officer to arrive, offered a few additional facts. He testified that he heard Ms. Mitchell yell to Officer Witte to "stay away, don't touch [her]." Tr. 41. He concluded that she appeared to have "mental issues or to be mentally unstable." *Id.* He believed the clothing she had on, describing it as a long sleeved shirt, to be inappropriate for the weather. Tr. 41-42. However, he later admitted that she had additional clothing available to her, something like a sweater or a sweatshirt or a jacket tied around her waist. Tr. 49. This evidence correlates with Kevin Thomas' testimony that he saw her dressed "normally" when she had a sweatshirt with a hood on before police arrived. Officer Carson admitted that she did not appear to be suffering any ill-effects from the weather. Tr. 49-50.

The RR fails to provide the details of *Maag v. Wessler*, 960 F.2d 773 (9th Cir. 1992). In *Maag*, the Ninth Circuit reviewed the facts of an arrestee who had repeatedly demonstrated factual support for the key finding of imminent danger to himself and others.

First, Mr. Maag showed immediate physical disability; he was described as "very weak and lacked motor coordination." *Maag*, 960 F.2d at 774. At one point, he lost his balance. *Id.* at 775. By contrast, Ms. Mitchell showed no lack of physical ability.

Second, prior to being taken into custody, Mr. Maag attacked a woman who tried to help him. *Id.* Neither police nor Mr. Thomas observed Ms. Mitchell do anything to try to harm another person.

Third, Mr. Maag presented an obvious danger to the community at large by driving a motor vehicle after an officer asked him not to because the officer perceived that Mr. Maag was in no condition to do so. *Maag*, 960 F.2d at 774-75. By contrast, Ms. Mitchell was on foot and did nothing, nor threatened to do anything, to harm others.

A comparison to *Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997), also favors Ms. Mitchell. There, police had credible evidence that the mental health arrestee was attempting to commit suicide. *See also Glass v. Mayas*, 984 F.2d 55, 57 (2d Cir. 1993) (threats with a gun to an individual).

Finally, the RR seems to understand the time line, but it is important to recall that the first key event for Fourth Amendment purposes is the placement of Ms. Mitchell into custody. She asked the officer to not touch her; she did not consent to being taken into custody. Nor did she consent to the search of her bags. It was not until after she had been arrested that police learned that she had been previously smoking methamphetamines and, concurrent with the un-warned custodial questioning, the police searched her bags. The search of her bags and the interview of her in the car, all constitute the illegal fruit of the poisonous tree, the fruit of the initial illegal arrest. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407 (1963). The facts of the search of the bag, and the interview, cannot be bootstrapped into a basis for the initial arrest.

DATED this 17th day of March, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Michael D. Dieni
Assistant Federal Defender
Alaska Bar No. 8606034
550 West 7th Avenue, Suite 1600
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mike_dieni@fd.org

Certification:

I certify that on March 17, 2006, a copy of the foregoing document, with attachment, was served electronically on:

Larry D. Card, Esq.

/s/ Michael D. Dieni